[Civ. No. 19060.   First Dist., Div. Two.   June 23, 1960.]

RICHMOND TEACHERS CREDIT UNION (a Nonprofit Corporation), Appellant, v. JAMES F. WATERS, INC. (a Corporation), Respondent.

Ralph Bancroft and Robert E. Halsing for Appellant.

Everett S. Layman, Kenneth S. Carey, Everett S. Layman, Jr., and Arthur J. Lempert for Respondent.

KAUFMAN, P. J.—Appellant, Richmond Teachers Credit Union, filed this action to recover damages for the respondent's alleged trespass as a bailee to an automobile which appellant claimed as the chattel mortgagee and to obtain a declaration of rights under a prior judgment obtained by the appellant against its mortgagor, one Mae Moore, who had purchased the automobile from the respondent under a conditional sales contract. Mae Moore is not a party to this action.

The matter was first tried in 1955 and judgment entered in favor of the appellant on January 20, 1956. Thereafter, on respondent's motion, a new trial was granted. The parties

entered into a stipulation of facts, retrial was had in December, 1958, and judgment entered in favor of the respondent on December 19, 1958. This appeal is taken from that judgment.

The trial court found the following material facts: on October 17, 1952, Mae Moore bought from the respondent Waters a new DeSoto Firedome four-door sedan under a written conditional sale contract. The total price of $4,119.96 plus a time differential charge was to be paid as follows: the trade-in value of a used Nash automobile; a check for $525.50; $1,440 in 12 monthly installments; and a final payment of $2,080 on October 26, 1953.

Miss Moore was given possession of the vehicle on that day or the day following. She then went to the appellant's office and obtained a loan of $3,200 on her promissory note and a chattel mortgage on the DeSoto. The same day, Mrs. Basford, the appellant's secretary, called the respondent and spoke to the salesman who had sold the car to Miss Moore. At that time, the loan to Mae Moore had not been approved by the appellant's loan committee. Appellant agreed to notify the respondent when the loan was approved and to send the check directly to defendant's Mr. Simpson.

On October 22, plaintiff issued its check in the sum of $3,200 payable to the order of Mae Moore and James F. Waters, Inc. The check bore the following printed notation on its face: "Endorsement of this check evidences payment in full of items hereunder set forth." Beneath the word "Date" was written the following: "10/24/1952"; beneath the printed word "Description" was written "Pay in full DeSoto," followed by the serial number of the automobile. Mrs. Basford placed the check in an envelope addressed to the respondent and gave the envelope and check to Mae Moore with instructions to deliver the check to Mr. Simpson, the respondent's credit manager.

On Saturday, October 25, 1952, Mae Moore presented the check to the defendant in San Francisco. Respondent's cashier attempted to contact the appellant but was unable to do so because appellant was closed. Mae Moore endorsed the check and delivered it to respondent's cashier; the check was then endorsed by the respondent.

Respondent disbursed the $3,200 as follows: $1,420 was applied to the unpaid principal balance due on the DeSoto, $525.50 was applied to Mae Moore's check which had been given in part payment and which had been returned by the

bank; $96.33 was paid on an old account which Mae Moore owed to Waters and $1,158.17 was paid to Mae Moore by check. Thereafter, on November 29, 1952, Mae Moore refinanced the DeSoto at the Bank of America which paid the balance due to the respondent Waters, who thereupon transferred the certificate of ownership to the Bank of America.

On December 7, 1952, appellant commenced an action in the Superior Court of Contra Costa County against Mae Moore on the promissory note which was in default. In this action, the appellant procured the issuance of a writ of attachment and upon locating the automobile, Mae Moore's interest therein was attached by the appellant. Possession of the automobile was taken by the sheriff of the city and county of San Francisco. The sheriff notified the appellant of the third party claim on behalf of the Bank of America, appellant obtained possession of the automobile and between February 7, 1953, and May 2, 1953, plaintiff sold the automobile for the sum of $2,800. On May 2, 1953, appellant obtained a judgment against Mae Moore in the Contra Costa County action.

The trial court found that the appellant did not at any time have the possession or the right to the possession of the DeSoto automobile; that the respondent was not an involuntary bailee of said automobile and did not commit a trespass as a bailee. The court also found it was not true that Mae Moore was insolvent and unable to pay the Contra Costa County judgment and that it was not true that the respondent assisted Mae Moore in refinancing the automobile with the Bank of America. The court then concluded that the appellant, not having the right to possession, had no standing to sue on any count of trespass or conversion; that the loss herein was caused by Mae Moore; that the appellant by whose negligence it happened must be the sufferer; and that in the Contra Costa County action, the appellant made an election of remedies which constituted a bar to the instant proceeding.

Appellant challenges only the findings and conclusions relating to its election of remedies in the Contra Costa County action as a bar to this action. Appellant argues that these findings are not supported by the evidence and that it is not barred in this proceeding as it had two independent causes of action, one on the note and one for conversion.

As pointed out above, appellant challenges only some of the findings and states that all other findings and conclusions of law are immaterial. Appellant has, therefore, waived

any claim that the remaining findings are unsupported by the evidence. (*People* ex rel. *Dept. of Public Works* v. *McCullough,* 100 Cal.App.2d 101 [223 P.2d 37].) ▮ If one finding supported by substantial evidence will sustain the trial court's judgment, it will be presumed that the trial court predicated its judgment upon such finding and questions relative to other findings become immaterial on appeal. (*Brewer* v. *Simpson,* 53 Cal.2d 567 [2 Cal.Rptr. 609, 349 P.2d 289]; *Horney* v. *Horney,* 118 Cal.App.2d 679, 682 [258 P.2d 555]; *Mershon Co.* v. *Pachmayr,* 88 Cal.App.2d 901 [199 P.2d 687].) ▮ There is ample evidence in the record to sustain the finding that appellant did not have possession or the right to possession, the conclusion that appellant had no standing to sue is sustained. (*Thomsen* v. *Culver City Motor Co., Inc.,* 4 Cal.App.2d 639 [41 P.2d 597].)

▮ Appellant also does not challenge the finding that its negligence caused the loss in the instant case, so the judgment is amply sustained on that basis. (*Shammas* v. *Boyett,* 114 Cal.App.2d 139 [249 P.2d 880].) ▮ It was stipulated that the appellant began the Contra Costa County action with full knowledge of how its check had been disbursed by the respondent. The record also indicates that before beginning this action, the appellant knew that the automobile had been refinanced through the Bank of America and that the appellant would not get the certificate of ownership. When appellant attached the Moore automobile, it abandoned its lien, under the rule stated in *Wingard* v. *Banning,* 39 Cal. 543, 549 as follows:

". . . If the defendant intended to rely upon his lien, and if the property was wrongfully taken from his custody by Mitchell, the remedy was by an action against him, either to recover the possession or for a wrongful conversion, in which the measure of damages would have been the amount of the lien, not exceeding the value of the property. Instead of resorting to this, which was the only appropriate remedy, the defendant not only made an affidavit to the effect that he had no lien, but he instructed the Sheriff to seize the property and hold it as a security for his demand. In doing so he clearly abandoned his lien, and elected to rely on his attachment as a security . . ."

Although the judgment can be sustained on any of these grounds, we will briefly discuss the question of election of remedies.

■ The securing of an attachment in pursuit of a contractual remedy ordinarily operates as an election to proceed under the contract count and estops a plaintiff from seeking relief on a tort theory of liability. (*Steiner* v. *Rowley*, 35 Cal. 2d 713 [221 P.2d 9]; *Jones* v. *Martin*, 41 Cal.2d 23 [256 P.2d 905]; *Estrada* v. *Alvarez*, 38 Cal.2d 386 [240 P.2d 278]; *Crag Lumber Co.* v. *Crofoot*, 144 Cal.App.2d 755 [301 P.2d 952]; *Acme Paper Co.* v. *Goffstein*, 125 Cal.App.2d 175 [270 P.2d 505]; *Eistrat* v. *Brush Industrial Lumber Co.*, 124 Cal.App.2d 42 [268 P.2d 181].) Appellant argues that this rule is not applicable here. However, the instant case does not fit the special circumstances under which the rule has been held not to apply. (See *Lenard* v. *Edmonds*, 151 Cal.App.2d 764 [312 P.2d 308]; *Bohn* v. *Watson*, 130 Cal.App.2d 24 [278 P.2d 454]; *De Laval Pac. Co.* v. *United Cleaners & Dyers Co.*, 65 Cal. App. 584 [224 P. 766]; *Perkins* v. *Benguet Consol. Min. Co.*, 55 Cal.App.2d 720 [132 P.2d 70].)

The instant case is on all fours with *Eistrat* v. *Brush Industrial Lumber Co.*, *supra.* In that case, Jones Lumber, the third party, contracted with the plaintiff to cut lumber on plaintiff's property and to comply with all applicable state and federal regulations; title did not pass until after the timber was cut. Jones cut a quantity of timber without complying with state and federal regulations and sold it to defendants. Plaintiff informed the defendants that Jones had not complied with the forestry rules and had violated the contract. Subsequently, Jones was declared bankrupt and the federal court found that all of Jones' rights in the contract had been terminated after a certain date. Plaintiff commenced an action against Jones and levied a writ of attachment on the defendants for an amount they owed Jones for the lumber purchased from him. Subsequently, the plaintiff filed an action for damages for conversion and injury to property against the defendants. In affirming the lower court judgment for the defendants, the appellate court relied on the rule discussed above. ■ Likewise, in the instant case, the appellant had a choice of two remedies: one against Mae Moore for breach of contract and to recover title to the automobile; the second, against both Miss Moore and the respondent for conversion of the chattel. In the instant case, likewise, the appellant proceeded first on the contract action and obtained a writ of attachment by which the chattel was reduced to possession. Thereafter, appellant cannot hold the respondent, the third

party defendant, liable on the theory of a tort action. Appellant is in the same position as the conditional vendor of an automobile who does not repossess under his contract but sues for the purchase price and attaches the automobile. Our Supreme Court has said:

"It has been often stated by the courts of this state that in the ordinary conditional sale contract under which the seller has the right to repossess the property or to recover the purchase price therefor, upon the buyer's default, certain conduct on the former's part will constitute an irrevocable election by him to pursue his remedy for the purchase price to the exclusion of his right to repossession, and that such election results in the passage of the seller's retained title to the buyer. [Citations.] The basis for that doctrine is not clearly expressed in the above cited cases. It appears, however, by implication or direct statement therein that it is founded either on the doctrine of estoppel, or is an application of the principle of waiver, or is based on the theory that the two remedies are wholly inconsistent. Most frequently it is merely announced as a principle of law without any discussion of the reasoning upon which it rests, other than to peremptorily state that conduct, such as an action to recover the purchase price, is inconsistent with a reliance on the retained title, and that conduct in the pursuit of one right, bars the other as being an election of remedies. In most instances, if there is an election, it would be more accurately an election of substantive rights rather than an election of remedies . . ." (*Ravizza* v. *Budd & Quinn, Inc.,* 19 Cal.2d 289 at 293 [120 P.2d 865].)

Appellant, relying on *Pacific Coast Cheese, Inc.* v. *Security First Nat. Bank,* 45 Cal.2d 75 [286 P.2d 353], further argues that respondent has not been injured or prejudiced in any way by its action against Mae Moore. This case is not here in point. In the Pacific Coast Cheese case, *supra,* certain checks drawn against the plaintiff's account were altered to raise the amounts; the defendant bank honored the checks as altered and deducted the raised amounts from the plaintiff's account. The bank also dishonored other checks of the plaintiff on the ground that insufficient funds remained in the account after the deductions had been made. Subsequently, it was discovered that the alterations had been made by the plaintiff's bookkeeper. The plaintiff obtained a judgment against the bookkeeper for the amount of the items improperly deducted from the plaintiff's account. This judgment was not satisfied. The

plaintiff then brought an action against the bank to recover the amounts wrongfully deducted. The trial court directed a verdict for the defendant. In reversing this directed verdict, the Supreme Court said:

"The evidence offered by the bank would support a finding that it was not negligent, but there is nothing in the record which compels such a conclusion or warrants a directed verdict on this ground.

"The directed verdict cannot be justified, as contended by defendant, on the theory that plaintiff is barred under the doctrine of election of remedies by reason of the recovery of judgment against the bookkeeper for damages resulting from alteration of the checks. The doctrine is based on estoppel and, when applicable, operates only if the party asserting it has been injured..."

Appellant's argument overlooks the fact that by obtaining the attachment in the Contra Costa County action, it gained an advantage which barred it from pursuing another remedy.

In view of the foregoing, the judgment must be affirmed.

Judgment affirmed.

Draper, J., and Stone, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.